531 So.2d 1036 (1988)
Josephine BARONE, Appellant,
v.
SCANDINAVIAN WORLD CRUISES (BAHAMAS), Ltd., a Bahamian Corporation, and Trans-American Services, Ltd., a Foreign Corporation, Appellees.
No. 87-2031.
District Court of Appeal of Florida, Third District.
October 4, 1988.
*1037 Barbara Green, Miami, Casuso & Trompeter, South Miami, for appellant.
Mitchell, Harris, Horr & Associates and David J. Horr, Miami and Jonathan W. Skipp, Coconut Grove, for appellees.
Before HUBBART, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from a summary judgment entered for the defendants, Scandinavian World Cruises (Bahamas), Ltd., a Bahamanian corporation, which owns the M/V Scandinavia, and Trans-American Services, Ltd., a foreign corporation, which provides food and beverage to the vessel. The judgment was based upon a finding that the plaintiff, Josephine Barone, a passenger for hire on the vessel, failed to file her lawsuit against these defendants within one year of her injury aboard the vessel as required by the terms of the passage contract ticket. We reverse upon holdings that (1) the plaintiff effectively sued Scandinavian World Cruises (Bahamas), Ltd. [hereafter Bahamas] when it timely sued two misnamed defendants, to-wit: Scandinavian World Cruises, Inc. and Scandinavian World Cruises Ltd., Inc., and that this mere misnomer of the proper defendant was correctable by an amendment relating back to the time the action was commenced against the misnamed defendants; and (2) there is a genuine issue of material fact as to whether Trans-American, as it urges, was acting as an agent of Bahamas and was thus covered by the reduced limitation period set forth in the passage contract ticket or, as the appellant urges, was an independent contractor subject to the ordinary three-year limitation period for maritime torts.[1]

I.
The original complaint was filed on behalf of the plaintiff on July 24, 1984, one day less than a year after her injury, and named two defendants, Scandinavian World Cruises, Inc., and Scandinavian World Cruises Ltd., Inc. The complaint alleged that both defendants owned and operated the M/V Scandinavia and were engaged in *1038 the business of common carriage of passengers for hire and that the plaintiff was a passenger on the vessel. In three counts, the complaint alleged that the plaintiff was injured as a result of defendants' negligence, breach of their contract to transport the plaintiff in a safe manner, and negligence under the general maritime law of the United States.
Service of the complaint, together with interrogatories and a notice to produce, was accepted for both named defendants by "Ms. Diane Okis [Dana Okins], Ins. Department." The returns show that Scandinavian World Cruises, Ltd., Inc. was served on October 9, 1984, and Scandinavian World Cruises, Inc. was served on October 11, 1984. On the return of service for Scandinavian World Cruises, Inc. appears the notation, "auth to accept."
The named defendants moved to dismiss. At the time of the filing of this motion, the movants knew that Scandinavian World Cruises, Inc. did not own the M/V Scandinavia and that Scandinavian World Cruises Ltd., Inc. did not even exist. Nonetheless, their motion began with the words "[c]ome now the Defendants, SCANDINAVIAN WORLD CRUISES, INC., a Florida corp., and SCANDINAVIAN WORLD CRUISES, LTD., INC., a Foreign corp." As grounds, the motion asserted, in boilerplate language, insufficiency of service of process, insufficiency of process, and lack of jurisdiction over the person; failure to state a cause of action; insufficient allegations of venue; insufficient allegations of the contract and failure to attach a copy; and vagueness and ambiguity. Consistent with their disingenuous identification of themselves in their motion to dismiss, the defendants served with the motion a notice to produce that identified them as "the defendants, SCANDINAVIAN WORLD CRUISES etc." Nothing in the motion or notice suggested to the plaintiff that the defendants contended that plaintiff was suing the wrong entities or had misnamed them, or that one of the named entities did not exist.
The plaintiff attempted to serve the defendants anew. With no information in the defendants' motion to dismiss to alert her, plaintiff again addressed the summons to Scandinavian World Cruises, Inc. On June 18, 1985, Dana Okins accepted service of this summons as "Administrative Assistant Marine Operations Authorized to Accept." On August 13, 1985, an alias summons was served on Scandinavian World Cruises, Inc. and accepted by "Julie Klick corporate secretary authorize[d] to accept service for Mr. Niels Eric Lund."
In response to the new attempts at service, the defendants filed a renewed motion to dismiss. Like their first motion, it began with the words, "[c]ome now the Defendants, SCANDINAVIAN WORLD CRUISES, INC., a Florida corporation and SCANDINAVIAN WORLD CRUISES, LTD., INC., a foreign corporation." Again, using similar boilerplate language, the motion raised insufficiency of process, service, and personal jurisdiction; failure to state a cause of action, and vagueness. And again, nothing in the motion hinted that the defendants would subsequently contend that plaintiff was suing the wrong corporations and that one of the named defendants did not even exist.
The defendants' responses to the interrogatories served with the initial complaint were much the same. The interrogatories asked for, among other things, the name of the owner and charterer of the ship. The defendants, first identifying themselves as "SCANDINAVIAN WORLD CRUISES, etc., et al.," answered that the owner was United Steamship Co. (Bahamas) Limited, and the charterer was Scandinavian World Cruises (Bahamas), Ltd.; they did nothing to clarify the relationship between those entities and "Scandinavian World Cruises, etc., et al.," the answerer of the interrogatories, or Scandinavian World Cruises Ltd., Inc., the filer of the motion to dismiss.
Having learned through discovery that the correct name of the corporate entity that owned and operated the M/V Scandinavia on the date of her injury was Scandinavian World Cruises (Bahamas), Ltd., the plaintiff moved to amend her complaint by interlineation, that is, to substitute Scandinavian World Cruises (Bahamas), *1039 Ltd. where the names of the named defendants appeared, requesting that the amendment relate back to the date the complaint was filed. The motion pointed out that Dana Okins, an agent of Scandinavian World Cruises (Bahamas), Ltd., did in fact accept service of the complaint and that Scandinavian World Cruises (Bahamas), Ltd. had notice of the claim at the time it was served on Okins and would not be prejudiced by the amendment. The plaintiff also noted that Okins had testified on deposition that Scandinavian World Cruises Ltd., Inc. does not exist; that Scandinavian World Cruises, Inc. existed only as an inactive corporation with a board of directors; that the correct name of the corporate entity that owned and operated the M/V Scandinavia at the time plaintiff was injured was Scandinavian World Cruises (Bahamas), Ltd.; and, most significantly, that the complaint had been served on Okins, who was an agent of Scandinavian World Cruises (Bahamas), Ltd.[2]
In January 1986, the trial court denied the motion to amend by interlineation[3] and entered summary judgment for Scandinavian World Cruises, Inc. and Scandinavian World Cruises, Ltd., Inc., the nonexistent entity.
Two weeks later  about a year and a half after the expiration of the ticket's one-year limitation, but well within the three-year federal statutory limitation  the plaintiff moved for leave to file an amended complaint. In addition to alleging that she had learned through discovery that the correct name of the corporate entity operating the vessel was Scandinavian World Cruises (Bahamas), Ltd., the plaintiff alleged that she had also learned that the dining area where the accident occurred was operated by a subcontractor, Trans-American Services, Ltd. With leave of court, the amended complaint, now naming as defendants Scandinavian World Cruises (Bahamas), Ltd. and Trans-American Services, Ltd., was filed on March 7, 1986.
The "new" defendants moved to dismiss, raising the same boilerplate as their predecessors and, predictably, the defense that the plaintiff's action was barred by the one-year statute of limitations. Although dismissal was denied, the defendants later prevailed on their limitations defense when summary judgment was entered in their favor.

II.

A.
The long-standing general rule in Florida with respect to amendments changing *1040 the description of a defendant is that amendment by interlineation is proper and will relate back to the original filing of the complaint if "the mis-description [of the defendant] is interpreted merely as a misnomer or defect in the characterization of the party... ." Cabot v. Clearwater Construction Co., 89 So.2d 662, 664 (Fla. 1956) (error to dismiss complaint and deny motion to amend to change name of defendant from "Clearwater Construction Co., a corporation" to Robert M. Snyder, doing business as Clearwater Construction Company, not incorporated). See Sexton v. Panning Lumber Co., 260 So.2d 898 (Fla. 4th DCA 1972) (amendment from Panning Lumber Co. to its related corporation Panning Lumber and Supply Co. should have been permitted where companies had officers and stockholders in common and names were often used interchangeably). See also Hohl v. Croom Motorcross, 358 So.2d 241 (Fla. 2d DCA 1978). Where the misdescription is the omission of a geographical word in the name of the corporate defendant, it has been held that an amendment relating back to the filing of the original complaint should be permitted. Argenbright v. J.M. Fields Co., 196 So.2d 190 (Fla. 3d DCA 1967) (amendment from "J.M. Fields Co., a New Jersey corporation" to "J.M. Fields of East Florida, Inc., a Florida corporation"). By even stronger reasoning, where, as here, the misdescribed defendant is known to the real defendant to be nonexistent and the real defendant is therefore incapable of being misled by the misdescription, amendment should be permitted.
The present case is much like Thomas v. Taylor Creek Marina of Fort Pierce, Inc., 520 So.2d 708 (Fla. 4th DCA 1988). There, the plaintiff filed his complaint against "Taylor Creek Marina, a Florida corporation," a nonexistent corporation. After the statute of limitations ran, the plaintiff amended his complaint to change the name of the defendant to the actual corporation, "Taylor Creek Marina of Fort Pierce, Inc." Upon the defendant's motion asserting that the suit against it was barred by the applicable statute of limitations, the trial court dismissed the complaint. On appeal, the Fourth District reversed the dismissal, holding that the amendment served to correct a mere misnomer and that, therefore, the filing of the amended complaint related back to the time of filing of the original complaint for statute of limitations purposes. The holding of Thomas compels a like result in the present case.

B.
An extended discussion of the plaintiff's position with respect to Trans-American is unnecessary. Suffice it to say that because Trans-American's contracts with Bahamas specify that Trans-American is not an agent of Bahamas, at least a genuine issue of material fact exists as to whether Trans-American may have the benefit of the passage ticket's one-year limitation period made available to, inter alia, agents of the carrier.[4]
REVERSED AND REMANDED.
NOTES
[1] The normal limitation period for damages or injuries for a maritime tort is three years. 46 U.S.C. § 763a. Section 183b of Title 46 permits contractual shortening of the time period to one year, but by its terms applies to "the manager, agent, master or owner of any sea-going vessel ... transporting passengers...." The passage contract ticket did in fact shorten the time for suit to one year: "No suit for any cause against Carrier in connection with this contract or the voyage shall be maintainable unless commenced within one 1 [sic] year after termination of the voyage." The ticket effectively shortened the limitations period. See Hallman v. Carnival Cruise Lines, Inc., 459 So.2d 378 (Fla. 3d DCA 1984). See also Moody v. Scandinavian World Cruises, Ltd., Inc., 506 So.2d 1102 (Fla. 3d DCA 1987) (affirming without opinion one-year statute of limitations on identical ticket).
[2] Throughout these proceedings, the distinctions among the corporate names were, to say the least, blurred. Niels Lund, former chief executive officer of Scandinavian World Cruises (Bahamas), Ltd., testified:

"A. [My p]resent position is president and CEO of Sea Escape, Limited.
"Q. What's the relationship with Sea Escape, Limited and Scandinavian World Cruises, Incorporated?
"A. As far as I know there are no relationships.
"Q. Is there any relationship between Sea Escape and Scandinavian World Cruises Bahamas, Limited?
"A. There's a relationship where Sea Escape, Limited, it's July 1, '85, took over the operation and organization of Scandinavian World Cruises, Limited.
"There's one more relationship, is that the 100 percent owner of Scandinavian World Cruises Bahamas, Limited is a minority owner of Sea Escape, Limited."
(emphasis added).
Lund also testified that, before working for Sea Escape, Ltd., he had been employed by "Scandinavian World Cruises, Limited as CEO." Although he denied any connection with Scandinavian World Cruises, Inc., he did identify his signature on the annual report for that company. Copies of the corporate annual reports of Scandinavian World Cruises Inc. for 1983 through 1986 show Lund as an officer or director.
Similarly, Lund's administrative assistant, Julie Klick, testified that, when service was made on Scandinavian World Cruises Bahamas, Ltd., regardless of the name on the pleadings, she would turn the documents directly over to Dana Okins. She did not know if she would have done anything differently if she had noticed the incorrect name in this case.
[3] The plaintiff petitioned this court to grant a writ of certiorari to review the order denying her motion to amend by interlineation. Our denial without opinion of this petition did not constitute an adjudication on the merits and is not res judicata on the plaintiff's claim on this appeal. Accent Realty of Jacksonville v. Crudele, 496 So.2d 158 (Fla. 3d DCA 1986).
[4] As the parties recognize, their positions concerning the status of Trans-American as agent or independent contractor are one thing for limitations purposes and may be quite another for liability purposes.